**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER EUGENE RICHARDSON<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY; CARLOS DEL TORO, Secretary of the Navy; FRANKLIN R. PARKER, Assistant Secretary of the Navy for Manpower & Reserve Affairs; and ELIZABETH HILL, Executive Director of the Board for Correction of Naval Records<br><br>*Defendants*. | Civil Action No. |

## COMPLAINT

1.      Plaintiff Christopher Eugene Richardson brings this action for declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq. ("APA") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 against Defendants the United States Department of the Navy; Carlos Del Toro, in his official capacity as Secretary of the Navy; Franklin R. Parker, in his official capacity as Acting Assistant Secretary of the Navy for Manpower & Reserve Affairs; and Elizabeth Hill, in her official capacity as Executive Director of the Board for Correction of Naval Records (collectively, the "Navy").

2.      Christopher Eugene Richardson served in the Navy from approximately August 1981 until his discharge in November 1987.  Mr. Richardson had dreamed of following in his father's footsteps by spending his career serving his country.  And as a young black man growing up in a violent neighborhood in Philadelphia, the Navy represented a unique opportunity to see the

1

world and build a better life for himself.  For almost four years, Mr. Richardson was on track to make his dream a reality.  He was an excellent sailor who was given leadership positions and praised by his commanding officers and fellow sailors alike for his hard work and dedication. Everything changed for Mr. Richardson in June 1985, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████

3.      Isolated and unable to process the ████████████████████, Mr. Richardson unfortunately turned to alcohol to cope, frequently drinking so much that he would black out. Those binge-drinking sessions also sometimes led to drug use.  After receiving two non-judicial punishments ("NJP") for marijuana and cocaine use in 1986 and 1987, respectively, the Navy discharged Mr. Richardson with an "Other than Honorable" characterization of service on November 23, 1987.

4.      On November 18, 2022, Mr. Richardson applied to the Board for Correction of Naval Records (the "Board") to upgrade the status of his discharge from service.  Although Mr. Richardson submitted ample evidence that he suffered from post-traumatic stress disorder ("PTSD") following ██████████████████████, and that the two drug use incidents for which was discharged were connected to his PTSD, the Board nonetheless denied his application on the ground that there was "no convincing evidence" of a connection between the two.  The Board's decision failed to credit the evidence submitted by Mr. Richardson, contrary to controlling guidance, and failed to offer any explanation in support of its conclusion.  Worse still, the Board made its decision under the false premise that Mr. Richardson had not raised ████████

2

██████ in prior applications to the Board.  The Board likewise violated controlling guidance when concluding that Mr. Richardson's drug use would outweigh "any and all" mitigation provided by ████████████████████.  This suit seeks judicial review of the Board's decision.

5.     Decisions concerning discharge-upgrade requests "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1402 (D.C. Cir. 1995).  Here, the Board's ruling on Mr. Richardson's discharge-upgrade application fails the "basic procedural requiremen[t] . . . that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

6.     Specifically, the Board's decision failed to employ the required "liberal consideration" standard when evaluating whether the conduct for which Mr. Richardson was discharged was connected to—and mitigated by—PTSD ██████████ that he suffered during his during military service.  Far from giving the required liberal consideration to the evidence submitted by Mr. Richardson, the Board simply asserted without explanation or supporting evidence that there was "no convincing evidence of any nexus between ██████ mental health conditions and/or related symptoms and [Mr. Richardson's] misconduct." A decision without reasoning or supporting evidence, and that contravenes controlling guidance, is a heartland case of arbitrary and capricious action.

7.     The Board likewise failed to follow controlling guidance and its own prior decisions when applying a functionally *per se* rule that Mr. Richardson's drug use would automatically outweigh any mitigation provided by his PTSD or other mental health conditions. There is no rational basis for applying such a rule.

8.      Mr. Richardson accordingly requests that the Court: (1) declare that the Board's decision is arbitrary and capricious, unsupported by substantial evidence and not in accordance with law; and (2) set aside the decision and grant Mr. Richardson's discharge-upgrade request.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201-02, and may hear this action pursuant to the APA, 5 U.S.C. §§ 701-06, because Mr. Richardson seeks review of final agency action for which there is no other adequate remedy.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia and a substantial part of the events giving rise to the claim occurred in the District of Columbia.

## PARTIES

11.      Plaintiff Christopher Eugene Richardson is a Navy veteran, who resides at 9104 Overlook Trail, Fort Washington, Maryland 20744.  He is a citizen of the United States, and served in the Navy from 1981 to 1987.  Defendant U.S. Department of the Navy is one of three service departments in the Department of Defense ("DoD").  It has responsibility for the administration, control, and operation of the United States Navy, a military organization primarily responsible for maritime operations.  The civilian head of the Department of the Navy is the Secretary of the Navy.

12.      Defendant Carlos Del Toro is the Secretary of the Navy and is named solely in his official capacity.  Secretary Del Toro is authorized by statute (10 U.S.C. § 1552) to act through a board of civilians—the Board—to correct any military record of a former member of the Navy when doing so is necessary to correct an error or remove an injustice.

13.      Defendant Franklin R. Parker is the Assistant Secretary of the Navy for Manpower and Reserve Affairs and is named solely in his official capacity.  Assistant Secretary Parker

4

exercises authority delegated by the Secretary of the Navy to accept or reject recommendations from the Board relating to applications for the correction of military records, including discharge upgrades.

14.     Defendant Elizabeth Hill is the Executive Director of the Board for Correction of Naval Records and is named solely in her official capacity.  Ms. Hill exercises authority delegated by the Secretary of the Navy to administer and oversee the Board's operations.

## STATUTORY AND REGULATORY BACKGROUND

15.     Following World War II, Congress enacted legislation that provides a mechanism to amend military records where "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).

16.     Subject to exceptions not relevant here, "such corrections shall be made by the Secretary [of each military branch] acting through boards of civilians."  *Id.*

17.     Decisions of these boards are "final" and, "[e]xcept where procured by fraud," are "final and conclusive on all officers of the United States."  *Id.* §§ 1552 (a)(4)-(5); *see also* 32 C.F.R. § 723.6(e) (providing that the Board is authorized to take "final corrective action" on behalf of the Secretary).

18.     Under this statutory framework, the Navy established the Board to consider and act upon correction requests submitted by Navy service members and veterans.  *See* 32 C.F.R. § 723.1 (creating Board).

19.      Reflecting Congress's desire that veterans with erroneous or unjust records have a real, available remedy, the Board's authority is broad and includes the correction of military records to: (a) change the reason for discharge to medical separation or retirement; (b) re-instate a veteran to military service; (c) re-characterize a veteran's less than fully honorable discharge; (d)

change the basis for a discharge; (e) void a pass over of a candidate for promotion; (f) establish

eligibility for pay and/or retirement benefits; (g) increase or change active-duty service time, which

in some cases will create eligibility for U.S. Department of Veterans Affairs ("VA") benefits or

military retirement; (h) change adverse line of duty investigations; (i) remove statutory bars to

veterans' benefits; and (j) take other actions as may be necessary to correct material error or

injustice.  *See* 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 723.3(a) (describing authority of Board

to correct records).

20.     The Board operates within the Office of the Secretary of the Navy, in accordance

with 10 U.S.C. § 1552.  The Board consists of senior Navy civilians who are appointed and serve

at the pleasure of the Secretary of the Navy.  A panel consisting of at least three Board members

considers each application, with one member serving as the panel chair.  *See* 32 C.F.R. §

723.3(e)(1).

21.     Federal regulations guide the Board's consideration of applications for correction.

Among other things, the Board may obtain information from the applicant or Navy and may

likewise request advisory opinions from Navy sources.  *Id.* § 723.6(a).  Any decision of the Board

must be consistent with comments by proper naval authority.  *Id.* § 723.6(e)(1)(i).  In cases

involving PTSD as a supporting rationale for relief, the Board must seek advice and counsel from

a psychiatrist, psychologist, or social worker with training on PTSD.  10 U.S.C. § 1552(g)(2).

22.     A majority vote of the panel constitutes an action of the Board.  32 C.F.R. §

723.6(a)(3).  When the Board denies a previously denied application without a hearing, the Board's

determination must be made in writing and include a statement of the grounds for denial.  *Id.* §

723.3(e)(3).  The Board's written statement must include all the essential facts upon which the

denial is based, "including, if applicable, factors required by regulation to be considered for

6

determination of the character of and reason for discharge."  *Id.* § 723.3(e)(4).  The Board must

then promptly furnish the statement of the grounds for denial to the applicant.  *Id.* § 723.3(e)(5).

## FACTUAL BACKGROUND

**I.     Mr. Richardson's Enlistment and Navy Service** ███████████████

23.     Mr. Richardson grew up in a rough neighborhood in Philadelphia, Pennsylvania.

The Navy represented an opportunity for Mr. Richardson to build a career on his own and escape

the cycle of crime and violence in which many of his peers found themselves trapped.

24.     Military service was a natural fit for Mr. Richardson: his father had made a career

in the Air Force as a mechanic, and his brother had served in the Army.  Mr. Richardson always

looked up to his father, in particular, and hoped to follow in his father's footsteps by spending his

career serving his country.

25.     Mr. Richardson enlisted out of high school in August 1981.  He completed basic

training in Great Lakes, Illinois.

26.     Mr. Richardson performed well in basic training and was given a leadership

position as recognition for his good performance.

27.     After basic training, Mr. Richardson was assigned to a torpedo testing ship in Key

Port, Washington.  He excelled on this assignment, forming close bonds with his fellow sailors and

earning a promotion to lead deck seaman in under two years.  Mr. Richardson understood that this

was a relatively rare occurrence at the time for a black sailor among a majority white crew.

28.     Mr. Richardson's former crewmates speak highly of him.  According to one of the

sailors that served with Mr. Richardson in Key Port, senior officers would repeatedly call on Mr.

Richardson for the hardest jobs because of their high regard for his abilities.  Another sailor

described Mr. Richardson as a "man of great character and an excellent crew member."

29.     Some white sailors were not happy to have a black sailor in a position of authority. This was particularly the case for the sailor that Mr. Richardson replaced as lead deck seaman.  But Mr. Richardson was determined to overcome these challenges and focused on doing the best job he could.

30.     Mr. Richardson's military service ███████████ was not flawless.  He received a Non-Judicial Punishment ("NJP") on January 19, 1984 for missing the ship's movement after oversleeping following a night out with other sailors.

31.     A month later, Mr. Richardson was involved in a car accident.  He lost control of his vehicle on a wet road and struck a pole.  This resulted in a second NJP on February 27, 1984 for reckless driving and hit and run.  No other vehicles or individuals were involved in this accident, and Mr. Richardson was not intoxicated when the crash occurred.  He did not leave the scene of the accident, and has never understood why he was charged with hit and run.

32.     Critically, neither of these punishments were cited as reasons for Mr. Richardson's discharge, and he was permitted to re-enlist multiple times after each incident.

33.     Despite some obstacles and missteps, Mr. Richardson continued to strive to be the best sailor he could and was well on his way towards making a career in the Navy.

**II.    Mr. Richardson's ███████████ and Discharge**

34.     Everything changed for Mr. Richardson on June 12, 1985, ███████████
███████████████████████████████████████████████████████
███

35.     ███████████████████████████████████████████████
███████████████████████████

36.  ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████

37.  ███████████████████████████████████████████████
██████████████████████

38.  ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████

39.  ███████████████████████████████████████████████
███████████████████████████████████████████████████

40.  ███████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████

41.    Feeling violated, ostracized, and alone, Mr. Richardson spiraled into a deep depression.

42.    All of his hard work to build a life and career in the Navy, including overcoming racial discrimination, felt like it had been undone.  T████████████████████████████████ ███████, Mr. Richardson unfortunately turned to alcohol as what he now recognizes was a form of self-medication.

43.    Prior to ███████████, Mr. Richardson had no issues with substance or alcohol abuse, and he had not used drugs while in the Navy at all.

44.    After ████████, however, Mr. Richardson frequently drank so heavily that he would black out.  Further, these binge-drinking sessions would occasionally lead to drug use, although Mr. Richardson typically would not even remember having used drugs.

45.    Mr. Richardson ultimately received two NJPs for drug use that resulted in his discharge from the Navy.  On May 6, 1986, he received an NJP for marijuana use, and a second NJP on August 20, 1987 for cocaine use.  Mr. Richardson had been binge-drinking on both occasions and could not recall that he had used those drugs.

46.    Notwithstanding his alcohol abuse and accompanying drug use ████████████ ████, Mr. Richardson continued to perform at a high level as a sailor.  In a November 4, 1987 letter one officer noted that Mr. Richardson "has continued to perform in an exemplary manner . . . [Mr. Richardson] can always be depended upon to complete any assigned task completely and expeditiously with little or no supervision."

47.    Another senior officer, in a contemporaneous letter, similarly felt that Mr. Richardson "was quick to apply himself, performing in an exemplary manner . . . as his section leader I was impressed with his eagerness to learn and accept responsibility."  That officer was "very surprised" to learn that Mr. Richardson had failed a drug test, given his exemplary performance.

48.    Nevertheless, Mr. Richardson was discharged with an "Other than Honorable" characterization of service on November 23, 1987.  The two drug use incidents were the *only* conduct cited as warranting discharge.

### III.     Mr. Richardson's Post-Discharge Life

49.     Two years after his discharge, Mr. Richardson demonstrated a remarkable amount of willpower to turn his life around.

50.     Mr. Richardson realized that alcohol was ruining his life and enrolled in a rehabilitation program in 1989.  Mr. Richardson successfully completed the program and now has been sober for over 30 years.

51.     More recently, in 2019, Mr. Richardson also sought help for his mental health conditions at the Washington, DC VA Medical Center.  Although he struggled with symptoms for decades, in 2020 Mr. Richardson was officially diagnosed with PTSD by a VA medical examiner related to ▅▅▅▅ and was granted service connection for treatment purposes.

52.     In September of 2022, psychologists at the GMU Center for Psychological Services confirmed Mr. Richardson's PTSD diagnosis ▅▅▅▅▅▅▅▅▅▅▅▅▅▅, and concluded that it is as likely as not that "Mr. Richardson's PTSD symptoms, panic disorder, and major depression were related to ▅▅▅▅▅▅" and that "Mr. Richardson's misconduct of marijuana and cocaine use was due to mental health conditions, as he was untreated and he was not given support or treatment to deal with what he experienced in the Navy."

53.     Mr. Richardson has been a model citizen since his discharge from the Navy.  He has spent virtually his entire post-Navy career in either private security or serving his community in law enforcement.

54.     Today, he works as a safety officer for Prince George's County Public Schools in Maryland, where he particularly relishes the opportunity to serve as a mentor to children and young adults.

55.     He is also a steady presence in the life of his daughter and granddaughter, and a very active member of his church community, where he spends much of his free time singing in the choir.

## IV.     Mr. Richardson's Prior Discharge Upgrade Applications

56.     Mr. Richardson applied to the Naval Discharge Review Board ("NDRB") for a discharge upgrade in 1991 without the assistance of counsel.  The NDRB determined that no change was warranted.

57.     In 2014, Mr. Richardson applied to the Board for the first time, prior to his first PTSD diagnosis, again without the assistance of counsel.  The Board found that the evidence submitted by Mr. Richardson was insufficient to establish material error or injustice.

58.     Mr. Richardson again applied to the BCNR in February 2021 without the assistance of counsel.  The Board denied his application in December 2021, based on an advisory opinion that there was insufficient evidence "to support Petitioner's contention of PTSD ████ or that all his Misconduct behavior could be attributed to PTSD."

## V.     Issuance of PTSD Upgrade Guidance

59.     On September 3, 2014, then-Secretary of Defense Chuck Hagel issued a memorandum providing clarification to the Board regarding the review of discharge-upgrade applications filed by veterans with mental health conditions or who are survivors of sexual trauma (the "Hagel Memo").  *See* "Supplemental Guidance to Military Boards for Correction of

Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder" (Sept. 3, 2014).[1]

60.     The Hagel Memo provides that an upgrade request must be given "liberal consideration" where "[s]ervice records or any document from the period of service substantiate the existence of one or more symptoms" of PTSD or a PTSD-related condition at the time of service.  Id. at 3.

61.     The Hagel Memo further states:

Liberal consideration will also be given in cases where civilian providers confer diagnoses of PTSD or PTSD-related conditions, when case records contain narratives that support symptomology at the time of service, or when any other evidence which may reasonably indicate that PTSD or a PTSD-related disorder existed at the time of discharge which might have mitigated the misconduct that caused the [other] than honorable conditions characterization of service.

Id.

62.     Under the policy set forth in the Hagel Memo, the Board was required to consider PTSD or PTSD-related conditions as a mitigating factor in the misconduct that contributed to Mr. Richardson's less-than-honorable discharge and give "liberal consideration" to his request for an upgrade.

63.     Further expanding the guidance set forth in the Hagel Memo, then Under Secretary of Defense for Personnel and Readiness, Anthony Kurta, issued a memorandum on August 25, 2017 (the "Kurta Memo") providing clarification that the previously issued interpretative guidance should benefit not only those veterans who suffer from PTSD and related conditions, but also any other service-related mental health condition.  *See* "Clarifying Guidance to Military Discharge

---

[1] Available at
https://law.yale.edu/sites/default/files/documents/pdf/Clinics/vlsc_Hagel_Memo.pdf.

Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modifications of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment" (Aug. 25, 2017).[2]

64.     The Kurta Memo further states that the liberal consideration standard also applies to claims for a discharge upgrade based on sexual assault or sexual harassment.

65.     The Kurta Memo explains that misconduct itself may be evidence of a health condition, and further states that "liberal consideration" must be given to petitions for a discharge upgrade based on mental health conditions, including PTSD.  *Id*. at 3.

66.     The Kurta Memo also recognizes that "[a]n Honorable discharge characterization does not require flawless military service."  *Id.* at ¶ 26(h).

67.     On July 25, 2018, then-Under Secretary of Defense Robert Wilkie issued guidance to the Board to clarify and assist with determinations involving equity, injustice, or clemency (the "Wilkie Memo").  *See* "Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice, or Clemency Determinations" (July 25, 2018).[3]

68.     The Wilkie Memo centers around ideas of fairness, and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second changes in situations in which individuals have paid for their misdeeds."  *Id.* at 1.

---

[2] Available at https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf.

[3] Available at https://arba.army.pentagon.mil/documents/Wilke20180725JusticeEquityClemency.pdf.

69.     The Wilkie Memo identifies factors that the Board should consider when applicable, including an applicant's "acceptance of responsibility, remorse, or atonement of misconduct," post-discharge conduct, and whether the misconduct may have been a "youthful indiscretion." *Id.* at 3.

70.     Current Navy policy directs that, if mental health conditions contributed to a service member's misconduct, the medical condition will "take precedence" when considering whether the service member should be administratively separated. *See* SECNAV Announces New Administrative Separation Policy (June 30, 2016).[4] Previously, "a service member's misconduct took precedence over diagnosed mental health conditions when considering separation[.]" *Id.* The current policy makes clear that any service member previously separated from service under such circumstances may seek to have their discharge reviewed and upgraded by the Board. *Id.*

## THE BOARD'S ORDER DENYING MR. RICHARDSON'S UPGRADE REQUEST

71.     Mr. Richardson submitted an application for upgrade of his discharge characterization on November 18, 2022, including among other new evidence the evaluation of GMU psychologists confirming his PTSD diagnosis and opining on the connection between his alcohol and drug use and his ▮▮▮/PTSD.

72.     On February 1, 2023, the Navy's qualified mental health professional issued an advisory opinion in connection with Mr. Richardson's application ("Advisory Opinion").

73.     The Advisory Opinion correctly acknowledged that Mr. Richardson suffers from PTSD ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[4] Available at https://www.dcmilitary.com/quarterdeck/news/secnav-announces-newadministrative-separation-policy/article_61132c98-94ea-5d02-9e04-3b79df5ccc31.html.

74.    However, the Advisory Opinion ultimately concluded that "[t]here is insufficient evidence all of [Mr. Richardson's] misconduct could be attributed to PTSD or another mental health condition ████████

75.    The Advisory Opinion is seriously flawed in at least three key respects.

76.    First, the Advisory Opinion disregarded the significant evidence supporting the conclusion that Mr. Richardson's NJPs for drug use were related to ████, including Mr. Richardson's own testimony and the opinions of the qualified psychologists at GMU, and did not identify any evidence to the contrary.  Indeed, the Opinion itself concedes that "it is possible that [Mr. Richardson's drug and alcohol abuse] increased and became problematic following his ████████ "

77.    Second, the Advisory Opinion incorrectly placed substantial weight on Mr. Richardson's ████ misconduct—missing the ship's movement and a civilian charge of reckless driving—despite the fact that he was not discharged for those offenses, was permitted to re-enlist following those offenses, and did not engage in any further misconduct until after ██ ████ and onset of his PTSD symptoms.  Further, the record makes clear that Mr. Richardson's discharge was related only drug use, which occurred only after the onset of Mr. Richardson's PTSD symptoms ████████  Mr. Richardson was not charged with any misconduct relating to drug use prior to ████

78.    Third, the Advisory Opinion engaged in improper speculation regarding Mr. Richardson's conduct, stating that "[i]t seems unusual that [Mr. Richardson] was willing to report ████ at the time, but not willing to raise it during two discharge review requests that were physically and temporally removed from potential retribution or humiliation."  Drawing such an

inference against an applicant on this basis is precisely the opposite of what the controlling guidance requires of the Board, and the speculation is based on a factually incorrect assertion.

79.     Mr. Richardson submitted a reply to the Advisory Opinion on March 23, 2023, highlighting these flaws and explaining why the Opinion was inconsistent with the legal standard the Board must apply.

80.     Following an executive session on April 7, 2023, the Board issued a letter on April 12, 2023 denying Mr. Richardson's application.

81.     The Board's April 12 letter begins by noting Mr. Richardson's ███████ NJPs for missing the ship's movement and civilian reckless driving charge, neither of which led to his discharge nor prevented his reenlistment.  The letter itself acknowledges that these incidents were not related to Mr. Richardson's discharge, noting that "[o]n 4 November, 1987, your command notified you that you were being processed for an administrative discharge by reason of misconduct due to **drug abuse**."

82.     The Board's letter falsely states that Mr. Richardson "did not include ███████ ██████████████" in *any* of his prior applications.  This is flatly incorrect.  To cite just one example, in the Board's December 2021 letter denying Mr. Richardson's most recent prior application the Board stated that "there was insufficient clinical evidence to support your contention of PTSD from █████████████████," acknowledging that Mr. Richardson's ██████ ████ was the basis of his claim.  And the Advisory Opinion itself acknowledges that "In 2021, ██████ was considered during a review of [Mr. Richardson's] discharge character of service."

83.     The Board went on to conclude that "there was no convincing evidence of any nexus between any ██████ mental health conditions and/or related symptoms and [Mr. Richardson's] misconduct, and determined that there was insufficient evidence to support the

argument that ███████ and/or mental health conditions mitigated the misconduct that formed the basis of [Mr. Richardson's] discharge."

84.    However, the Board's decision does not explain how it could reach a "no convincing evidence of any nexus" conclusion while applying the required liberal consideration standard in light of, among other evidence:

    a.   Mr. Richardson's detailed testimony in his personal statement that he used alcohol and drugs to self-medicate the anguish he experienced following the ███ ;

    b.   the absence of any documented issues with alcohol or drug use prior to the ███ ;

    c.   the fact that both drug use incidents occurred after ██████ took place, and the absence of evidence supporting an alternative explanation as to why the drug use occurred;

    d.   the decision of the VA to designate Mr. Richardson's PTSD as connected to his military service for treatment purposes; and

    e.   the conclusion of psychologists at the GMU Center for Psychological Services regarding Mr. Richardson's PTSD resulting from ██████ and connection between his PTSD and drug use misconduct.

85.    The Board's decision does not offer any explanation as to how it gave such evidence liberal consideration while still reaching the conclusion that there was "no convincing evidence of any nexus," nor does it identify *any* evidence that supports its conclusion.  Instead, the Board merely asserts that "there was no convincing evidence" of a connection between ██████████

████ and his drug use and thus "the Board concluded that [Mr. Richardson's] misconduct was not

due to ▇ or mental health-related conditions or symptoms."  Indeed, the Board did not even

address the acknowledgment in the Advisory Opinion that "it is possible that [Mr. Richardson's

drug and alcohol abuse] increased and became problematic following ▇▇▇▇."

86.     Further,  the  Board  also  stated  that  "even  if  the  Board  assumed  that  [Mr.

Richardson's] misconduct was somehow attributable to ▇ or any mental health conditions, the

Board unequivocally concluded that the severity of [his] misconduct far outweighed any and all

mitigation offered by such mental health conditions."

87.     In support of that contention, the Board argued that "illegal drug use by a service

member is contrary to military core values and policy, renders such members unfit for duty, and

poses an unnecessary risk to the safety of their fellow service members" and that "marijuana use

in any form is still against Department of Defense regulations."  The Board did not otherwise

explain why two drug use incidents would "far outweigh any and all mitigation offered by" Mr.

Richardson's PTSD caused by ▇▇▇, nor how such a conclusion could be reconciled

with the requirement that the Board liberally consider ▇▇▇▇ as mitigating the

conduct for which he was discharged.

88.     The Board's conclusion that drug use automatically outweighs mitigation provided

by PTSD caused by ▇▇▇ amounts to a *per se* rule that contradicts binding guidance,

which requires the Board to liberally consider PTSD resulting from ▇▇ and other related mental

health conditions as mitigating factors in the conduct leading to discharge.

89.     The Board's conclusion is also inconsistent with prior Board decisions that *have*

determined  drug  use  (including  marijuana  use  specifically)  was  outweighed  by  mitigating

circumstances.  *See* BCNR 0048-22 (discharge due to use of marijuana and methamphetamines

upgraded based on finding that PTSD partially mitigated wrongful conduct); BCNR 3077-22

(discharge due to use of marijuana upgraded based on finding that misconduct was a "youthful indiscretion" and poor decision-making during a stressful period); BCNR 2856-22 (discharge due to marijuana use upgraded despite finding of no nexus between mental health conditions and misconduct based on post-service conduct); BCNR 5539-22 (discharge due to marijuana use upgraded in light of overall service record).

90.     Further, the Board's conclusion that Mr. Richardson's drug use would outweigh any mitigation provided by his PTSD failed to address several factors that, under DoD guidance, the Board was required to apply to Mr. Richardson's application.  Specifically, the Board's decision does not account for the fact that Mr. Richardson's misconduct occurred entirely after he began to develop symptoms of PTSD; that Mr. Richardson was a young man at the time of his in-service misconduct; and that Mr. Richardson has successfully rehabilitated himself into a productive member of society and regrets his earlier drug abuse.

91.     By failing to apply these required factors under the "liberal consideration" standard, the Board applied a higher standard for relief than provided by applicable DoD policy.

92.     The Board's decision should be set aside for these reasons.

### FIRST CLAIM FOR RELIEF

**Violation of APA – Arbitrary and Capricious, Unsupported by Substantial Evidence and Contrary to Law Agency Action**

93.     The above paragraphs are incorporated herein by reference.

94.     "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions."  *Encino Motorcars*, 136 S. Ct. at 2125. Under that standard, agency action is unlawful if the agency fails to articulate a rational connection between the facts found and the choice made, fails to consider an important aspect of the problem,

or offers an explanation for its decision that runs counter to the evidence. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agencies therefore must "t[ake] a 'hard look' at all relevant issues and conside[r] reasonable alternatives to [their] desired course of action." *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 639 (D.C. Cir. 1984) (quoting *Motor Vehicle Mfrs. Ass'n*, *supra*).

95.     Here, the Board's decision is unlawful when judged against these standards for two reasons.

96.     *First*, the Board's conclusory finding that "there was no convincing evidence of any nexus between any ███ mental health conditions and/or related symptoms and [Mr. Richardson's] misconduct" was arbitrary, capricious, and unsupported by substantial evidence. The Board acknowledged it was required to give liberal consideration to the evidence Mr. Richardson submitted in support of a connection between ███ and the drug use for which he was discharged, including his own testimony, the surrounding factual circumstances, and the opinions of qualified mental health professionals.

97.     Despite paying lip service to the binding guidance, the Board did not grapple with or give liberal consideration to any of the evidence submitted by Mr. Richardson. Instead, the Board merely asserted that there was "no convincing evidence" of a connection between ███ ███ and the conduct cited in his discharge while providing no explanation of (1) why it was disregarding the ample evidence submitted by Mr. Richardson; or (2) what evidence, if any, supported the Board's conclusion. These are hallmarks of arbitrary agency action. *See, e.g.*, *Fuentes v. United States*, 157 Fed. Cl. 433, 461 (2021) (Board's decision held to be arbitrary and capricious where it did "not reflect an analysis of all of plaintiff's medical history and documentation in the record" and failed to consider evidence favorable to plaintiff's claim); *Valles-*

*Prieto v. United States*, 159 Fed. Cl. 611, 617 (2022) (decision of Air Force Board for Correction of Military Records held arbitrary and capricious because it "failed to consider the entire record. . . ignore[ed] relevant evidence . . . [and] cherry-picked which evidence to consider," including ignoring "evidence in the record contrary to its conclusion"); *U-Ahk-Vroman-Sanchez v. United States Dep't of Def.*, No. 19-CV-3141 (APM), 2021 WL 394811, at *8 (D.D.C. Feb. 4, 2021) (Physical Disability Board of Review's decision held arbitrary and capricious due to a "failure to engage with or even acknowledge the evidence in the record that supports" plaintiff's claim); White v. Mattis, No. CV 18-02867 (ESH), 2019 WL 6728448, at *5 (D.D.C. Dec. 11, 2019) (Physical Disability Review Board decision held arbitrary and capricious where it "fail[ed] to explain how its conclusion is supported by the facts" and did "not show that it took account of contradictory evidence").

98.     Further, with respect to the Board's consideration of whether there was a connection between ███████ and later drug use, Mr. Richardson was plainly prejudiced by the factually incorrect assumption of the Board that he had not raised ████████████ in his prior applications. This is underscored by the Advisory Opinion questioning Mr. Richardson's credibility and characterizing his conduct as "unusual,"—language that was specifically quoted in the Board's decision.

99.     *Second*, the Board's application of a functionally *per se* rule that drug use misconduct always outweighs "any and all" mitigation provided by mental health conditions contradicts both controlling guidance—which requires the Board to liberally consider whether misconduct is outweighed by mental health conditions, including PTSD specifically—and the Board's prior decisions concluding that drug use misconduct *was* outweighed by such mitigating circumstances.

100.     Compounding this error, the Board failed to consider several factors required by controlling guidance, including Mr. Richardson's acceptance of responsibility for his misconduct, his post-discharge conduct, and his age at the time of the misconduct.  The Board's decision fails to grapple with the favorable evidence regarding these factors and thus fails to apply these factors under the "liberal consideration" standard.

101.     The Board's decision should be set aside on these bases.

## **RELIEF REQUESTED**

WHEREFORE, Mr. Richardson respectfully requests that this Court issue judgment in his favor and against Defendants, and grant the following relief:

A.  Vacate the Board's denial of Mr. Richardson's application for a discharge upgrade;

B.  Declare that the Board's decision to deny his application was arbitrary, capricious, unsupported by substantial evidence and contrary to law;

C.  Grant Mr. Richardson's discharge upgrade request, upgrading his discharge characterization to "Honorable" or "General, Under Honorable Conditions," and replacing the narrative reason for separation from "Misconduct-Drug Abuse (Use)" with "Secretarial Authority" or "Miscellaneous/General Reasons";

D.  Grant Mr. Richardson reasonable attorney's fees and expenses pursuant to 28 U.S.C. § 2412; and

E.  Award such further relief as this Court deems just and proper.

Dated: July 16, 2024

_Daniel C. Auten_
_____
Daniel C. Auten
Scott A. Freling

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5543
DAuten@cov.com
SFreling@cov.com

*Counsel to Christopher E. Richardson*